IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-810-F

| | |
|---|---|
| ROSSEL O. ALFARO ZELAYA, *a/k/a/* "ROSSEL SANDOVAL," EDWARD HERNANDEZ, and SALVADOR MONTOYA, )<br><br>Plaintiffs, )<br><br>v. )<br><br>A+ TIRES, BRAKES, LUBES, AND MUFFLERS, INC., FLORES WELDING, INC., JULIO FLORES, and MARIELLE BELHASSEN, )<br><br>Defendants. ) | **ORDER** |

This matter is before the court on the Plaintiffs' Motion for Conditional Class Certification [DE-61],[1] and the Plaintiffs' Motion for Leave to File Excess Pages in Plaintiffs' Reply in Support of Plaintiffs' Motion for Conditional Class Certification [DE-88] ("Motion to File Excess Pages"). The Motion to File Excess Pages [DE-88] is ALLOWED. The Motion for Conditional Class Certification has been fully briefed and is ripe for ruling. For the reasons stated herein, the motion [DE-61] is also ALLOWED IN PART.

---

[1] The full title of the plaintiffs' motion is the Plaintiffs' Motion to Conditionally Certify This Matter as a Collective Action and for a Court-Authorized Notice to Be Issued Under Section 216(b) of the Fair Labor Standards Act, and to Certify This Matter as a Class Action under Fed. R. Civ. P. 23(a) and (b)(3), and to Appoint Class Counsel Under Fed. R. Civ. P. 23(g). However, to be brief, the court will refer to the motion as the Motion for Conditional Class Certification.

I.   RELEVANT PROCEDURAL AND FACTUAL BACKGROUND

This is an unpaid overtime and wage case pursued under the collective action provisions of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.* and under the North Carolina Wage and Hour Act ("NCWHA"), North Carolina General Statutes sections 95-25.1 *et seq.* The plaintiffs have submitted declarations and exhibits showing the following.

The named plaintiffs and putative class members all worked for either A+ Tires, Brakes, Lubes, and Mufflers, Inc. ("A+") or Flores Welding, Inc. ("Flores Welding"). *See, e.g.*, Zelaya Declaration [DE-62-3] ¶¶ 1-2; Ayala Decl. [DE-62-5] ¶¶ 1-2. While A+ and Flores Welding were two separate companies, they used the same employee handbook. *See* A+ Employee Handbook [DE-62-13]; Flores Welding Employee Handbook [DE-62-14]; *see also* Belhassen Deposition [DE-62-2] 79:10-14. The policies in those handbooks were identical and applied the same to the employees of both companies. *See* Belhassen Dep. [DE-62-2] 79:10-14, 82:11-14. The handbooks stated that non-exempt employees "working more than 40 hours in any workweek are entitled to overtime pay as required by law." *See* A+ Employee Handbook [DE-62-13] at 11; Flores Welding Employee Handbook [DE-62-14] at 11. Additionally, the handbooks stated that the defendants would reimburse "employees for reasonable expenses incurred for the benefit of [A+], or while on assignments away from the normal work location. All expenses must be pre-approved in writing by your immediate supervisor." *Id.*

Despite the policies and practices outlined in the handbooks, the declarations of the named plaintiffs and putative class members all tell the same story. As a result of the defendants' policies, the named plaintiffs and putative class members were frequently not paid overtime for the hours they worked. Specifically, the defendants did not pay class members for time they arrived early or worked late, which included time spent on loading and unloading vehicles and

2

travel time to job sites. *See* Zelaya Decl. [DE-62-3] ¶ 3; Moreno Decl. [DE-62-4] ¶¶ 4-5; Ayala Decl. [DE-62-5] ¶ 3; Diaz Decl. [DE-62-6] ¶ 4; Hernandez Decl. [DE-62-7] ¶ 4; Arellano Decl. [DE-62-8] ¶ 3; Carbonell Decl. [DE-62-9] ¶ 3; Botello Decl. [DE-62-10] ¶ 3. Additionally, while employees often worked more than eight hours a day and forty hours a week, they were instructed to report only eight hours per day and often had their reported hours reduced by their supervisors. *See* Zelaya Decl. [DE-62-3] ¶ 5; Moreno Decl. [DE-62-4] ¶¶ 6-7; Ayala Decl. [DE-62-5] ¶¶ 4-6, 8; Diaz Decl. [DE-62-6] ¶¶ 6-7; Hernandez Decl. [DE-62-7] ¶¶ 6-7; Arellano Decl. [DE-62-8] ¶¶ 4-5, 7; Carbonell Decl. [DE-62-9] ¶¶ 4, 6; Botello Decl. [DE-62-10] ¶¶ 4-6. Marielle Belhassen, an owner of the defendant companies who also managed payroll, stated that the hours were sometimes not paid because they had not been approved. *See* Belhassen Dep. [DE-62-2] 164:16-20. That is, if a supervisor had not approved an employee's hours, the employee would not be paid for the unapproved hours even if the employee had reported working those hours. *See id.* Indeed, Ms. Belhassen admitted that there were instances where she did not pay overtime even though an employee's recorded hours exceeded forty hours worked in a week. *See id.* 160:4-8, 187:25-188:9. Additionally, because of the way employees reported their hours, there were questions as to whether travel time was included in their reported hours. *See, e.g., id.* 127:24-129:25.

In addition to unpaid overtime, the majority of the declarations indicate that employees were charged for tools and training without the employees having the chance to authorize those deductions. *See* Moreno Decl. [DE-62-4] ¶ 12; Ayala Decl. [DE-62-5] ¶ 11; Diaz Decl. [DE-62-6] ¶ 11; Arellano Decl. [DE-62-8] ¶ 10; Carbonell Decl. [DE-62-9] ¶ 9. Ms. Belhassen admitted that the defendants deducted the cost of tools from the employees' pay. *See* Belhassen Dep. [DE-62-2] 116:23-117:7, 201:22-202:12. She further states that while she did get initial authorization

3

for deductions, she never gave employees the opportunity to rescind the authorization every time she made a deduction. *See id.*

Finally, employees were never reimbursed for meals purchased while out of town, despite the handbooks' promise that they would be reimbursed for reasonable expenses while at job sites away from the normal work location. *See* Moreno Decl. [DE-62-4] ¶ 13; Ayala Decl. [DE-62-5] ¶ 13; Diaz Decl. [DE-62-6] ¶ 12; Hernandez Decl. [DE-62-7] ¶ 11; Arellano Decl. [DE-62-8] ¶ 12; Carbonell Decl. [DE-62-9] ¶ 11; Botello Decl. [DE-62-10] ¶ 10. Ms. Belhassen admitted that the defendants did not reimburse employees for the costs of meals while traveling because the defendants did not consider those meals to be a reasonable expense. *See* Belhassen Dep. [DE-62-2] 120:18-123:14.

The named plaintiffs have identified approximately 200 putative class members. *See* List of Putative Class Members Produced by Defendants [DE-62-19]. The defendants oppose conditional certification.

## II. DISCUSSION

### A. The Plaintiffs May Bring a Collective Action Under the FLSA.

Under the FLSA, employees can bring suit, on behalf of themselves and other similarly situated employees, against employers for unpaid overtime and other claims. *See* 29 U.S.C. § 216(b). Employees who wish to become parties to the collective action must meet two requirements. First, they must be "similarly situated" to the other prospective class members. *See id.* Putative class members are "similarly situated" if they "raise a similar legal issue as to coverage, exemption, or nonpayment o[f] minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions." *See De Luna-Guerrero v. N.C. Grower's Ass'n, Inc.*, 338 F. Supp. 2d 649, 654 (E.D.N.C. 2004)

4

(quoting Fed. Lab. Standards Legis. Comm., Sec. Lab. Emp. L., Am. B. Ass'n, The Fair Labor Standards Act § 18IV.D.3 (Ellen C. Kearns et al. eds., 1st ed. 1999)). However, the parties need not be identical. *See id.* ("Differences as to time actually worked, wages actually due and hours involved are, of course, not significant to this determination."). Still, "conditional certification is inappropriate if it is apparent that the job responsibilities of potential class members differ in significant ways." *See Calderon v. Geico Gen. Ins. Co.*, No. RWT 10cv1958, 2011 WL 98197, at *4 (D. Md. Jan. 12, 2011) (citing *Andrade v. Aerotek, Inc.*, No. CCB-08-2668, 2009 WL 2757099, at *3-4 (D. Md. Aug. 26, 2009)). Second, putative class members must opt in by giving "consent in writing to become such a party," which consent must then be "filed in the court in which such action is brought." 29 U.S.C. § 216(b).

Class certification under the FLSA is a two-stage process. In the first stage, courts determine whether to conditionally certify a class based on a limited evidentiary record. *See McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 469 (E.D.N.C. 2010). Courts conditionally certify a class using a lenient standard that requires only (1) "substantial allegations that the putative class members were together the victims of a single decision, policy, or plan," *Id.* (quoting *Thiessen v. Gen Elec. Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001)), or (2) "a modest factual showing sufficient to demonstrate that [the named plaintiffs] and potential plaintiffs together were victims of a common policy or plan that violated the law," *see Ceras-Campo v. WF P'ship*, No. 5:10-CV-215-BO, 2011 WL 588417, at *2 (E.D.N.C. Feb. 9, 2011)) (quoting *Patton v. Thomson Corp.*, 364 F. Supp. 2d 263, 267 (E.D.N.Y. 2005)). After conditional certification, courts typically authorize issuance of notice to putative class members regarding the lawsuit and their right to join as class members. *See McLaurin*, 271 F.R.D. at 469. The

5

present motion is requesting this initial conditional certification and, despite the defendants' arguments to the contrary, the lenient standard applies.

The second stage comes later, when discovery is complete and the record is more developed. The defendant typically initiates the second stage by moving for "decertification" of the class. *See id.* Courts apply more rigorous scrutiny in the second stage. *See id.* The court will deal with this second stage when and if the time arrives.

Here, the plaintiffs meet the requirements for conditional class certification. They have made a factual showing that they were subject to several common policies that violated the law. *See Ceras-Campo*, 2011 WL 588417, at *2. The plaintiffs and prospective class members also raise similar legal issues as to the nonpayment of wages arising from a similar factual setting. *See De Luna-Guerrero*, 338 F. Supp. 2d at 654. Foremost, the plaintiffs and putative class members, through their declarations, show that the defendants systematically reduced employee hours to reflect less hours than the employees actually worked. This resulted in employees not being paid overtime for hours they worked in excess of forty per week. Ms. Belhassen admitted that employees were only paid for "approved" hours and would not be paid for unapproved hours even if the employee had reported working those hours. *See* Belhassen Dep. [DE-62-2] 164:16-20. Additionally, the plaintiffs were charged for tools and training and not given a chance to rescind authorization for those charges. It was also company policy not to reimburse employees for meals purchased while out of town, even though the employee handbooks stated that employees would be reimbursed for reasonable expenses while at job sites while traveling. This factual showing meets the requirements for conditional class certification under the FLSA.

6

**B. The Plaintiffs May Bring Their NCWHA Claims as a Class Action under Rule 23 of the Federal Rules of Civil Procedure.**

Under Rule 23 of the Federal Rules of Civil Procedure, plaintiffs seeking to bring suit as a class action must satisfy all four prerequisites of subsection (a) and must also meet one of the requirements of subsection (b). The prerequisites of subsection (a) are

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* The plaintiffs argue that they meet both these prerequisites and the third requirement of subsection (b), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.*

**1. The Prerequisites of Rule 23(a)**

The four elements of Rule 23(a) have been dubbed (i) numerosity, (ii) commonality, (iii) typicality, and (iv) adequacy of representation. *McLaurin*, 271 F.R.D. at 475. The plaintiffs meet each element.

**i. Numerosity**

Under the first requirement, the class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). While a particular number is not necessary, classes with as few as eighteen members have been certified. *See McLaurin*, 271 F.R.D. at 475 (quoting *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984)) ("No specified number is needed to maintain a class action."). Here, the named plaintiffs have identified approximately

200 putative class members. *See* List of Putative Class Members Produced by Defendants [DE-62-19].[2] The plaintiffs meet the numerosity requirement.

### ii. Commonality and Typicality

The second and third requirements, commonality and typicality, generally merge into a single inquiry. *See Stott v. Haworth*, 916 F.2d 134, 143 (4th Cir. 1990). Simply put, both requirements determine whether the claims of both the named plaintiffs the class "are so interrelated that the interests of the class members will be fairly and adequately protected." *See id.* (quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982)). This requires a showing only that the common questions affect at least a substantial number of the class members. *See Brown v. Nucor Corp.*, 576 F.3d 149, 153 (4th Cir. 2009) (quoting *Shipes v. Trinity Indus.*, 987 F.2d 311, 316 (5th Cir. 1993)). Indeed, *allegations* of similar employment practices alone are sufficient to satisfy the commonality and typicality requirements. *See id.*

Here, as already discussed above, the plaintiffs' submissions show several common policies and practices that affect them: employees had their hours reduced when those hours were not "approved;" employees were not reimbursed for meals while traveling; and the cost of tools and training was deducted from employee pay without providing them with the opportunity to rescind their authorization. Additionally, there are questions as to whether employees were allowed to include travel and time spent loading and unloading as part of their reported hours. Finally, the plaintiffs' and the prospective class members' declarations manifest their unified desire for the same outcome—to recover the wages owed to them. The plaintiffs meet the requirements of commonality and typicality.

---

[2] While some of those putative class members may be time barred from bringing claims, the number would still be over 100 regardless of how many might be time barred and still meets the requirements of numerosity.

### iii. Adequacy of Representation

The fourth requirement, adequacy, requires that the named class representatives (1) not have interests adverse to those of the class members, and (2) have competent and qualified counsel who will vigorously prosecute the class's interests. *See Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 539 (E.D.N.C. 1995). The named plaintiffs meet these requirements. Their interests are the same as the putative class members: to recover (1) lost wages for overtime, (2) reimbursement for meals purchased while away from their normal work location, and (3) wages deducted for tools and training. The named plaintiffs are also represented by competent and qualified counsel. Counsel has extensive experience litigating similar matters, including other wage and hour suits in North Carolina. The plaintiffs meet the requirement of adequacy.

### 2. The Requirements of Rule 23(b)(3)

Even after plaintiffs have met the requirements of Rule 23(a), they must also meet one of the requirements of Rule 23(b). In this case, the plaintiffs claim to meet the requirements of Rule 23(b)(3), which requires (1) that common questions of law or fact predominate over individual questions, and (2) that a class action lawsuit be a superior method to other available methods for litigating the action. *See* Fed. R. Civ. P. 23(b)(3).

### i. Predomination of Common Questions of Law or Fact Over Individual Questions

The plaintiffs have shown that common questions of law and fact predominate over the individual questions. Indeed, nearly every declaration submitted by the named plaintiffs shows the same common fact issues—alteration of employees' reported hours, nonpayment of overtime wages, deductions for tools and training, and non-reimbursement of meals while away from the normal work site. Furthermore, these common fact issues were created by uniform policies—Ms. Belhassen admitted (1) that it was company practice that meals purchased while away from the

9

normal work site were not reimbursed; (2) that the defendants, as a practice, deducted the cost of tools from the employees' pay, and that Ms. Belhassen never gave employees the opportunity to rescind the authorization every time she made a deduction; and (3) that, as company practice, if a supervisor had not approved an employee's hours, the employee would not be paid for the unapproved hours even if the employee had reported working those hours. These issues, as previously discussed, raise serious questions as to the legality of these practices. There are also questions as to whether employees were allowed to include travel time and time spent loading and unloading as part of their reported hours. While damages resulting from these alleged harms may vary, these common questions predominate over the individual ones.

### ii. Class Action as the Superior Method

Rule 23(b)(3) lists four pertinent, but non-exhaustive, factors to evaluate when considering whether a class action suit is the superior method for litigating a matter. These factors are

(A) the class members' interests in individually controlling the prosecution or defense of separate actions;
(B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
(D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). Here, a class action is the superior method for litigating this matter. First, individual lawsuits would be more costly to the putative class members, and those class members would likely be less inclined to pursue their individual claims. Second, there is no indication that any putative class member has undertaken similar litigation. Third, the defendants' places of business are located in this district, and all of the putative class members worked at those places of business. And fourth, there is no indication that this class action will be particularly difficult to manage. Indeed, much more onerous would be attempting to deal with all

of the potential individual suits brought by the putative class members. A class action suit is the superior method for litigating this matter. Therefore, the plaintiffs' claims under the NCWHA will be certified as a class action under Rule 23 of the Federal Rules of Civil Procedure.

### C. Statute of Limitations

The parties have disputed when and how the statute of limitations will apply, both under the FLSA and under the NCWHA. Under Rule 15(c) of the Federal Rule of Civil Procedure, amendments will relate to an original complaint back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." *See* Fed. R. Civ. P 15(c)(1)(B). The Fourth Circuit has held that two requirements arise in determining whether an amendment relates back. *See Grattan v. Burnett*, 710 F.2d 160, 163 (4th Cir. 1983). "First, to relate back there must be a factual nexus between the amendment and the original complaint." *See id.* Second, once the nexus is established, the amendment is liberally construed to relate back as long as (1) the defendant had notice of the claim, and (2) the defendant will not be prejudiced. *See id.* The key is notice to the defendant of the claims. *See Fla. Steel Corp. v. N.J. Steel Corp.*, 966 F.2d 1442, 1992 WL 119864, at *1 (4th Cir. 1992).

Here, the NCWHA amendments relate back. The original complaint centers on the defendants' failure to pay overtime for hours worked and reported. *See, e.g.*, Complaint [DE-1] ¶¶ 21, 24-29 (outlining the defendants' improper pay practices). That failure to pay provides the factual nexus between the original complaint and the amendments. The FLSA claims may differ from the NCWHA claims, but they both derive from the same factual nexus and arise out of the same conduct. Given that nexus, amendments will be *liberally* construed to relate back as long as the defendants had notice of the claims and are not prejudiced. The original complaint provides

11

notice of wage and hour claims against the defendants. While the complaint may not have provided notice of every individual who might have wage and hour claims, it certainly provided notice of the type of claims the defendants would be facing. Additionally, there is no indication that the defendants will be prejudiced. The NCWHA claims will relate back to the date of the original complaint.

However, FLSA claims do not relate back to the original complaint. *See Lee v. Vance Exec. Prot., Inc.*, 7 F. App'x 160, 167 (4th Cir. 2001); *see also* 29 U.S.C. § 256(b). Therefore, any FLSA claims brought by class members opting-in to the collective action will be barred if the alleged violations occurred more than three years prior to the date a class member opts-in.

## III. CONCLUSION

The Motion to File Excess Pages [DE-88] is ALLOWED. For the foregoing reasons, it is further ORDERED as follows:

1. The Motion for Conditional Class Certification [DE-61] is ALLOWED IN PART on the terms set forth herein.

2. The plaintiffs' claims under the FLSA are conditionally certified as a collective action under 29 U.S.C. § 216(b).

3. The plaintiffs' claims under the NCWHA are certified as a class action under Rule 23 of the Federal Rules of Civil Procedure.

4. For purposes of both the FLSA and the NCWHA claims, the class is defined as

> All current and former employees of Flores Welding, A+ Tires, Julio Flores, and Marielle Belhassen who resided in North Carolina and worked or currently work as laborers, and who performed work in North Carolina or Virginia at any time from November 21, 2010 through [deadline for opting-in] and who were, as a matter of practice, not allowed to report all of their hours worked and thus were not fully compensated for such hours;

and

> All current and former employees of Flores Welding, A+ Tires, Julio Flores, and Marielle Belhassen who resided in North Carolina and worked or currently work as laborers, and who performed work in North Carolina or Virginia at any time from November 21, 2011 through the present, from whom (1) deductions for the cost of tools or required certifications were taken, without the proper advance notice to make such deductions or without the opportunity to rescind the authorization at least seven days prior to the deduction taking place; or (2) were subject to unreimbursed travel expenses in contravention of the above-listed employers' written policies.[3]

5. The court DENIES WITHOUT PREJUDICE the plaintiffs' request for court approval of their proposed notice and accompanying forms [DE-62-21]. Within twenty-one (21) days of entry of this order, the parties shall confer and jointly submit a proposed class notice and accompanying forms in accordance with this order. The parties shall also confer regarding a suitable deadline for opting-in and submit that deadline to the court.

6. Present counsel for the plaintiffs, Jimmy D. Braziel and Gilda A. Hernandez, are appointed as class counsel.

7. A+ and Flores Welding shall provide plaintiffs' counsel with the names and last known addresses of all putative class members within fourteen (14) days of this order.

SO ORDERED. This, the 28 day of September, 2015.

_____
JAMES C. FOX
Senior United States District Judge

---

[3] The court finds that this amended proposed class definition is appropriate and meets the concerns of the defendants. While some FLSA claims will still be barred, the definition is appropriate to provide notice to potential class members.

13