IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:13-CV-810-D

| | | |
|---|---|---|
| ROSSEL SANDOVAL-ZELAYA, SALVADOR MONTOYA, and EDWARD HERNANDEZ, on behalf of themselves and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | **ORDER** |
| A+ TIRES, BRAKES, LUBES, AND MUFFLERS, INC., FLORES WELDING, INC., JULIO FLORES, and MARIELLE BELHASSEN, | ) ) ) ) ) ) | |
| Defendants. | ) | |

Rossel Sandoval-Zelaya ("Zelaya"), Salvador Montoya ("Montoya") and Edward Hernandez ("Hernandez") (collectively, "named plaintiffs") seek relief under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 et seq. and the North Carolina Wage and Hour Act ("NCWHA"), N.C. Gen. Stat. § 95-25.1, et seq., from A+ Tires, Brakes, Lubes, and Mufflers, Inc. ("A+ Tires"), Flores Welding, Inc. ("Flores Welding"), Julio Flores ("Flores"), and Marielle Belhassen ("Belhassen") (collectively, "defendants"). The named plaintiffs seeks summary judgment as to liability [D.E. 133], good faith, and willfulness [D.E. 141]. Defendants seek partial summary judgment as to the statute of limitations [D.E. 152] and move for decertification of the collective action under the FLSA [D.E. 155]. As explained below, the court grants defendants' motion for partial summary judgment as to the statute of limitations, denies defendants' motion for decertification of the collective action under the FLSA, declines to exercise supplemental jurisdiction over the NCWHA class action, and grants in part and denies in part plaintiffs' motions for summary judgment as to liability, good faith, and willfulness.

I.

Flores Welding is a welding subcontractor. Belhassen Dep. [D.E. 62-2] 5–6. A+ Tires is an auto repair shop. [D.E. 134] ¶ 7; [D.E. 167] ¶ 7. The companies operate within the same facility. [D.E. 134] ¶¶ 6, 8; [D.E. 167] ¶¶ 6, 8. Belhassen is the vice president, secretary, and treasurer of A+ Tires and Flores Welding. [D.E. 134] ¶ 10; [D.E. 167] ¶ 10. Flores is a corporate officer and president of A+ Tires and Flores Welding. [D.E. 134] ¶ 11; [D.E. 167] ¶ 11. A+ Tires and Flores Welding use the same employee handbooks, and the rules apply equally to employees of both companies. See Belhassen Dep. [D.E. 62-2] 21–22; [D.E. 62-13] (A+ Tires Employee Handbook); [D.E. 62-14] (Flores Welding Employee Handbook). The employee handbooks state that all non-exempt employees are to be compensated at time-and-a-half for hours worked over 40 hours in a single workweek. See [D.E. 62-13] 6, 12; [D.E. 62-14] 6, 12.

From 2005 through 2011, Zelaya worked as a mechanic for defendants and received hourly wages. See 3d Am. Compl. [D.E. 72] ¶¶ 29–30; Answer [D.E. 73] ¶¶ 29–30; Zelaya Dep. [D.E. 134-8] 3. Zelaya asserts that he was told to report no more than 40 hours of work per week, regardless of how many hours he worked, and that defendants never paid him for more than 40 hours of work. 3d. Am. Compl. ¶ 34; Zelaya Decl. [D.E. 50-1] ¶¶ 3–4; 2d Zelaya Decl. [D.E. 62-3] ¶¶ 3–5; Zelaya Dep. [D.E. 134-8] 6. Zelaya also asserts that defendants maintained a policy of never paying employees for work performed early, before the normal workday, or late, after the normal workday. 2d Zelaya Decl. [D.E. 62-3] ¶ 3. Zelaya claims that he worked between twelve and fourteen hours per day, including on Saturdays. See 2d Zelaya Decl. [D.E. 62-3] ¶ 5.[1] Because Zelaya was not paid

---

[1] Defendants contest this assertion and reference testimony that the facility was often closed "when the crew returned from the jobsite, as early as 6:00 pm." [D.E. 167] ¶ 52 (citing Montoya Dep. [D.E. 156-3] 7–9). The cited deposition testimony does not directly state that the facility was ever closed by 6:00 p.m., but combined with testimony suggesting that Zelaya would work from 7:00 a.m. until 9:30 p.m., it does create a genuine issue of material fact as to whether Zelaya actually

2

for hours beyond 40 hours per week, he was never paid overtime pay at time-and-a-half. 2d Zelaya Decl. [D.E. 62-3] ¶ 8.

From August through September 2012, Hernandez worked for defendants as a welder and was paid hourly wages. Hernandez Decl. [D.E. 62-7] ¶ 1. From August 2011 through November 2012, and from January 2013 through March 2013, Montoya worked for defendants as a welder and was paid hourly wages. Montoya Decl. [D.E.62-4] ¶ 1. Hernandez and Montoya traveled to work sites as part of their job duties and assert that defendants had a policy of not paying employees for all hours worked, including not paying employees for time spent loading and unloading equipment onto trucks at defendants' shop at the beginning and end of the day, time spent traveling from defendants' shop to the jobsite, or time spent on the weekend preparing trucks for out-of-town projects. Montoya Decl. [D.E.62-4] ¶ 4; Hernandez Decl. [D.E. 62-7] ¶ 4. Both assert that employees were paid for work starting "at 7:00 a.m. at a jobsite" and ending "at 5:30 p.m.," minus a one-hour lunch, but that they would "routinely work[] more than eight (8) hours [per] day and forty (40) hours per week." Montoya Decl. [D.E.62-4] ¶¶ 5, 7; Hernandez Decl. [D.E. 62-7] ¶¶ 5, 7.

Hernandez and Montoya assert that they were never paid time-and-a-half for overtime hours worked and that they were not reimbursed for meals while working on projects out of town. See Montoya Decl. [D.E. 62-4] ¶¶ 11, 13; Hernandez Decl. [D.E. 62-7] ¶¶ 10–11. Montoya asserts that defendants deducted from his wages for "tools and/or OSHA training" and that he "believe[s]" he was not given proper notice and did not authorize those deductions. See Montoya Decl. [D.E.62-4] ¶ 12. Montoya and Hernandez assert that although they performed work by arriving early at defendants' shop, preparing the work truck, and traveling to the jobsite, they were never

---

worked twelve to fourteen hours every day. See Montoya Dep. [D.E. 156-3] 7–9; Zelaya Dep. [D.E. 156-6] 2–3.

3

compensated for that time. Montoya and Hernandez also claim that when they were paid overtime, they were paid at their regular wage rate rather than time-and-a-half. Compl. ¶ 35; Hernandez Decl. [D.E. 62-7] ¶¶ 4–6; Montoya Decl. [D.E. 52-1] ¶¶ 2–4. Montoya contends that he was not paid for "between 5 and up to 25 hours per week." See Montoya Decl. [D.E. 62-4] ¶ 5. Hernandez contends that he was not paid for "between 5 and 25 hours per week," although he does not say how much of this difference he believes was attributable to unpaid vehicle loading and how much was due to a separate assertion that employees would be paid according to the amount of hours their supervisor reported. See Hernandez Decl. [D.E. 67-2] ¶ 6. Zelaya does not claim that he was denied compensation for hours spent loading and unloading trucks or traveling to worksites, but he does assert that he was never paid overtime and was not paid for work performed before and after the employer-defined workday. See 2d Zelaya Decl. [D.E. 62-3] ¶¶ 4–6. Montoya and Hernandez do not assert that they were prohibited from reporting more than 40 hours of work per week.

A.

On November 21, 2013, Zelaya sued defendants, claiming violations of the FLSA [D.E. 1]. On December 31, 2013, Zelaya amended his complaint [D.E. 12]. On February 20, 2014, Zelaya amended his complaint a second time [D.E. 34].

On December 16, 2014, Zelaya filed a third amended complaint, which added Montoya and Hernandez as plaintiffs [D.E. 72]. The third amended complaint includes a putative collective-action claim against defendants for violating the FLSA and a putative class-action claim against defendants for violating the NCWHA. Id. In count one, plaintiffs claim that defendants violated the FLSA by failing to pay plaintiffs at time-and-a-half for overtime hours worked. Id. ¶¶ 70–78. In count two, plaintiffs claim that the FLSA statute of limitations should be three years instead of two years because defendants willfully violated the FLSA. Id. ¶¶ 79–80. In count three, plaintiffs allege that

4

defendants violated the NCWHA by failing to pay all wages owed and failing to reimburse plaintiffs for training, tools, travel, and meal expenses. Id. ¶¶ 81–92. Although brought as putative class and collective actions, the third amended complaint describes the basis for the named plaintiffs' individual theories of recovery. Zelaya claims that defendants told him not to report any hours beyond 40 in a workweek and that he would not be paid for any overtime hours. Id. ¶ 34. Hernandez and Montoya claim that they were not paid for certain hours spent loading or unloading trucks at defendants' shop or time spent traveling from defendants' shop to the jobsite. Id. ¶ 35.

On September 28, 2015, the court granted named plaintiffs' motion for conditional collective-action certification of the FLSA claim and class certification of the NCWHA claim [D.E. 94]. The court certified the classes for the purposes of counts one and three as

> All current and former employees of Flores Welding, A+ Tires, Julio Flores, and Marielle Belhassen who resided in North Carolina and worked or currently work as laborers, and who performed work in North Carolina or Virginia at any time from November 21, 2010 through [deadline for opting-in] and who were, as a matter of practice, not allowed to report all of their hours worked and thus were not fully compensated for such hours;
>
> and
>
> All current and former employees of Flores Welding, A+ Tires, Julio Flores, and Marielle Belhassen who resided in North Carolina and worked or currently work as laborers, and who performed work in North Carolina or Virginia at any time from November 21, 2011 through the present, from whom (1) deductions for the cost of tools or required certifications were taken, without the proper advance notice to make such deductions or without the opportunity to rescind the authorization at least seven days prior to the deduction taking place; or (2) were subject to unreimbursed travel expenses in contravention of the above-listed employers' written policies.

[D.E. 94] 12–13 (alteration in original). On November 20, 2015, notice of the action was mailed to all putative plaintiffs and class members [D.E. 99].

On November 16, 2016, named plaintiffs moved for summary judgment as to liability [D.E. 133] and filed a statement of material facts [D.E. 134, 136] and a supporting memorandum [D.E.

5

135]. On December 2, 2016, named plaintiffs moved for summary judgment on the issues of good faith and wilfulness [D.E. 141] and filed a statement of material facts [D.E. 142] and a supporting memorandum [D.E. 143]. On February 3, 2017, defendants moved for summary judgment as to the statute of limitations [D.E. 152] and for decertification of the collective action under the FLSA [D.E. 155] and filed a statement of material facts [D.E. 154] and supporting memoranda [D.E. 153, 156].

On February 10, 2017, named plaintiffs responded to the motion for summary judgment as to the statute of limitations [D.E. 158] and filed a responsive statement of material facts [D.E. 157]. On February 23, 2017, defendants responded in opposition to named plaintiffs' motions for summary judgment [D.E. 166] and to their statements of material facts [D.E. 167, 168]. On March 3, 2017, named plaintiffs responded to defendants' motion for decertification [D.E. 169]. On March 8, 2017, named plaintiffs replied to defendants' response regarding their motions for summary judgment [D.E. 170]. On March 17, 2017, defendants replied to named plaintiffs' response regarding the motion for decertification [D.E. 171]. On March 31, 2017, the Honorable James C. Fox took inactive senior status, and thereafter the case was reassigned to the undersigned. See [D.E. 172].

B.

In addition to the named plaintiffs, nineteen plaintiffs filed written consent to join the collective action under the FLSA and for the named plaintiffs to serve as their representatives. See [D.E. 24, 48, 53, 77, 78, 81, 82, 90, 91, 92, 100, 104, 106]. Four of those opt-in plaintiffs have voluntarily dismissed their claims. See [D.E. 162 through 165]. The parties agree that the statute of limitations bars the claims of a fifth opt-in plaintiff, Antonio Mosqueda. See [D.E. 153, 158].

The opt-in plaintiffs all assert that they were not compensated for time spent arriving at defendants' shop, loading defendants' trucks, traveling to and from jobsites, and unloading defendants' trucks at defendants' shop. See [D.E. 134-2] 2; [D.E. 134-7] 12; [D.E. 134-10] 71–73;

6

[D.E. 156-7 through 156-16, 156-18, 156-20 through 156-22]. None allege that they were prohibited from reporting more than 40 hours of work per week, and many report having been paid overtime. See [D.E. 156-7 through 156-16, 156-18, 156-20 through 156-22].[2]

II.

Defendants seek partial summary judgment as to five opt-in plaintiffs—Jaime O. Alfaro, Antonio Mosqueda, Jose Mosqueda, Rafael Mosqueda, and Reginald Clinton—based on the statute of limitations. See [D.E. 158]. The FLSA's statute of limitations runs for two years from the date the cause of action accrued, or three years from the date of accrual when the defendant willfully violated the FLSA. 29 U.S.C. § 255(a). An FLSA cause of action accrues when the plaintiff files his complaint. Id. § 256(a). An opt-in plaintiff is considered to have filed his complaint the day he filed his consent to be a party with the court. See Lee v. Vance Exec. Protection, Inc., 7 F. App'x 160, 167 (4th Cir. 2001) (per curiam) (unpublished).

Plaintiffs concede that those five opt-in plaintiffs' causes of action accrued, at the latest, more than three years before they became parties to this action. See [D.E. 158] 1–2. On February 21, 2017, plaintiffs stipulated to dismissing four of the five opt-in plaintiffs named in defendants' motion for summary judgment. See [D.E. 162 through 165]. As for opt-in plaintiff Antonio Mosqueda, his cause of action accrued more than three years before he became a party to this action. Thus, the statute of limitations also bars his claim. See [D.E. 106-1] (Antonio Mosqueda's consent to join, filed January 8, 2016); [D.E. 154-1] 11 (Response to Request for Admissions by Antonio Mosqueda

---

[2] Some of the opt-in plaintiffs also assert that defendants would "shave" hours off of their pay if plaintiffs' accounts of their hours worked conflicted with their supervisors' accounts, but plaintiffs did not mention that allegation in the third amended complaint. Plaintiffs may not amend their complaint via summary-judgment briefing or in response to a motion to decertify a collective action. See, e.g., Hexion Specialty Chems., Inc. v. Oak-Bark Corp., No. 7:09-CV-105-D, 2011 WL 4527382, at *7–10 (E.D.N.C. Sept. 28, 2011) (unpublished) (collecting cases).

stating that he was last employed by defendants "in 2012 for 1 year"). Accordingly, the court grants defendants' motion for partial summary judgment as to Antonio Mosqueda, Jamie O. Alfaro, Rafael Mosqueda, Jose Mosqueda, and Reginald Clinton and dismisses their FLSA claims.

III.

The FLSA contains a special form of collective action, separate from the general rules concerning class actions under Rule 23 of the Federal Rules of Civil Procedure. See 29 U.S.C. § 216(b). Unlike class actions under Rule 23(b)(3), in which class members are bound by the judgment unless they opt out of the class, collective FLSA actions require plaintiffs to give "consent in writing to become such a party." Id. FLSA collective-action plaintiffs must be "similarly situated" and opt in to the class by filing consent with the court. See id.

To determine whether plaintiffs are "similarly situated," courts consider "the factual and employment settings of the individual plaintiffs, the different defenses to which the plaintiffs may be subject on an individual basis, and the degree of fairness and procedural impact of certifying the action as a collective action." O'Brien v. Ed Donnelly Enters., Inc., 575 F.3d 567, 584 (6th Cir. 2009) (alterations, citations, and quotations omitted), abrogated on other grounds by Campbell-Ewald Co. v. Gomez, 136 S. Ct. 663, 670 (2016); see Martinez-Hernandez v. Butterball, LLC, No. 5:07-CV-174-H(2), 2011 WL 4549606, at *2–3 (E.D.N.C. 2011) (unpublished). The similarities between plaintiffs "must extend beyond the mere facts of job duties and pay provisions." Anderson v. Cagle's, Inc., 488 F.3d 945, 953 (11th Cir. 2007) (quotation omitted). A named plaintiff may demonstrate that opt-in plaintiffs are similarly situated by showing that all plaintiffs allege FLSA violations under the same theory, but a common theory is not strictly required in every case. See O'Brien, 575 F.3d at 585. Plaintiffs need not show that they had identical jobs or responsibilities, but must show that their positions were similar in relevant characteristics. See Calderon v. Geico

Gen. Ins. Co., No. RWT 10cv1958, 2011 WL 98197, at *4 (D. Md. Jan 12, 2011) (unpublished). The requirement that plaintiffs be similarly situated is less demanding than the standards for joinder or severance under the Federal Rules of Civil Procedure. See, e.g., Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1261 (11th Cir. 2008).

Certification of a collective action under the FLSA occurs in two steps. See id.; Ceras-Campo v. WF P'ship, No. 5:10-CV-215-BO, 2011 WL 588417, at *2 (E.D.N.C. Feb. 9, 2011) (unpublished); McLaurin v. Prestage Foods, Inc., 271 F.R.D. 465, 469 (E.D.N.C. 2010).[3] First, before discovery, courts make a preliminary determination whether to conditionally certify the action and allow notice to be sent to potential opt-in plaintiffs. See, e.g., Thiessen v. Gen. Elec. Capital Corp., 267 F.3d 1095, 1102, 1105 (10th Cir. 2001); McLaurin, 271 F.R.D. at 469. Conditional certification does not require a demanding evidentiary showing, but instead requires only "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." McLaurin, 271 F.R.D. at 469; see Ceras-Campo, 2011 WL 588417, at *2 (requiring only a "modest factual showing").

Second, after discovery, the defendant may move to decertify the action. At the second stage, plaintiffs must make a stronger factual showing. See Morgan, 551 F.3d at 1258–62. Deciding whether to decertify is fact intensive and requires the court to consider: "(1) the factual and employment settings of individual plaintiffs; (2) whether defendant[s] ha[ve] presented individualized defenses; and (3) fairness and procedural considerations." Martinez-Hernandez, 2011 WL 4549606, at *2; see Morgan, 551 F.3d at 1261; Thiessen, 267 F.3d at 1103.

---

[3] Some courts have followed a different procedure, modeled after the old "spurious class action" procedure, but that procedure is not the norm and no federal circuit court has adopted it. See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1214 (5th Cir. 1995) (discussing "spurious" line of cases but approving the two-step approach).

9

As for the first factor, the factual and employment settings of the individual plaintiffs, the named and opt-in plaintiffs' factual and employment settings are similar in some respects and different in some respects. As for the differences, Zelaya alleges that he was told he could not report more than 40 hours of work per week and never received any overtime pay. No other plaintiff makes that claim. Rather, the other plaintiffs allege that they received some overtime pay but not the correct amount. Another difference is that Zelaya was a mechanic who primarily worked at one of the defendants' shops, whereas Montoya, Hernandez, and the other opt in plaintiffs were welders who primarily traveled to different jobsites and claim that they did not receive pay for loading and unloading trucks. As for similarities, all plaintiffs allege that they did not receive the proper amount of wages and overtime pay and that they performed some unpaid work before and after the employer-defined workday. Thus, the first factor is in equipoise.

As for the second factor, individualized defenses, defendants do not assert individualized defenses. Rather, defendants deny having violated the FLSA concerning the wages paid to the named and opt-in plaintiffs. Thus, the second factor does not support decertification.

As for the third factor, fairness and procedural considerations, this court can conduct a combined trial of the fourteen FLSA claims fairly and efficiently. Moreover, a jury can reasonably be expected to absorb, retain, and individually process the FLSA claims of the fourteen plaintiffs. Thus, the third factor does not support decertification. Accordingly, having considered the entire record, the court denies defendants' motion to decertify the conditionally certified FLSA collective action.

IV.

Having denied defendants' motion for decertification of the FLSA collective action in count one, the court now addresses whether to exercise supplemental jurisdiction over the NCWHA class

10

action in count three. All plaintiffs—both named and class members—and defendants reside in North Carolina, and the claim in count three is a claim under North Carolina state law. Thus, the court exercises only supplemental jurisdiction over the class action.

A court may exercise supplemental jurisdiction "over all other claims that are so related to the claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties." 28 U.S.C. § 1367(a). A court may, however, decline to exercise subject-matter jurisdiction over a claim that "substantially predominates over the claim or claims over which the district court has original jurisdiction" or "in exceptional circumstances, [when] there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c); see Mora v. City of Gaithersburg, 519 F.3d 216, 231 (4th Cir. 2008). The exceptions in section 1367(c) apply "where permitting litigation of all claims in the district court can accurately be described as allowing a federal tail to wag what is in substance a state dog." De Asencio v. Tyson Foods, Inc., 342 F.3d 301, 309 (3d Cir. 2003) (quotation omitted). A state claim substantially predominates over a federal claim if it is "more important, more complex, more time consuming to resolve, or in some way more significant than its federal counterpart." Bagley v. Provident Bank, No. WDQ-05-0184, 2005 WL 1115245, at *1 (D. Md. Apr. 26, 2005) (unpublished); see De Asencio, 342 F.3d at 309. In determining whether to exercise supplemental jurisdiction over a state-law employment class action, courts consider the federal "preference" that FLSA claims be resolved through "opt-in actions," the novelty and complexity of the state-law issues, and "the disparity in numbers" between FLSA plaintiffs and state-law class members. See De Asencio, 342 F.3d at 310.

This court has original jurisdiction over the FLSA claims. Only nineteen plaintiffs opted in

11

to the collective action under the FLSA, and the statute of limitations barred the claims of five of those opt-in plaintiffs. Thus, only fourteen plaintiffs remain with FLSA claims. By contrast, the putative state-law class includes "approximately 200 putative class members." [D.E. 94] 7–8. In addition to allegations that defendants failed to pay owed wages, the NCWHA class action contains novel state-law NCWHA claims concerning defendants' alleged improper deductions and failure to reimburse employees for tools, meals, travel expenses, and training. See 3d Am. Compl. ¶¶ 86–89.

The court finds that the NCWHA class action substantially predominates over the FLSA claims. Additionally, the court finds that exceptional circumstances justify declining supplemental jurisdiction over the 200-plaintiff NCWHA class action. The 200-plaintiff class-action lawsuit alleging violations of the NCWHA unrelated to named plaintiffs' FLSA claims involves substantial complexity and novelty under North Carolina law unrelated to the FLSA claims over which the court exercises original jurisdiction. By comparison, the FLSA claims are straightforward. Allowing plaintiffs' state-law class action to proceed in this court with no jurisdictional hook other than the FLSA claims would be "allowing a federal tail to wag what is in substance a state dog." De Asencio, 342 F.3d at 309; see Mora, 519 F.3d at 231. Thus, the court declines to exercise supplemental jurisdiction over plaintiffs' state-law class action under the NCWHA and dismisses count three without prejudice to further proceedings on that claim in state court.

V.

The FLSA provides that "no employer shall employ any of his employees . . . for a workweek longer than forty hours" without paying the employee overtime compensation at least 1.5 times the employee's normal rate. 29 U.S.C. § 207(a)(1). The FLSA does not require that an employer specifically demand that the employee do the work. Rather it requires that the employer "suffer or permit" the work to be done. 29 U.S.C. § 203(g); see id. § 207(a)(1); Integrity Staffing Sols., Inc.

v. Busk, 135 S. Ct. 513, 517–19 (2014); Sandifer v. U.S. Steel Corp., 134 S. Ct. 870, 875 (2014). Under the FLSA, "[a]ny employer who violates the provisions of section . . . 207 . . . shall be liable to the employee[] affected in the amount of . . . their unpaid overtime compensation, . . . and in addition equal amount as liquidated damages." 29 U.S.C. § 216(b).

The Portal-to-Portal Act of 1947, 29 U.S.C. §§ 251 et seq., amended the FLSA and exempted employers from the FLSA's overtime-pay requirements for "activities which are preliminary to or postliminary to . . . principal activity or activities, which occur either prior to the time on any particular workday at which such employee commences, or subsequent to the time on any particular workday at which he ceases, such principal activities." 29 U.S.C. § 254(a). Thus, an employer must pay an employee minimum wage, or overtime wage as applicable, for hours beginning with the employee's first principal activity and through the employee's last principal activity in a given workday. See Integrity Staffing Sols., Inc, 135 S. Ct. at 517–19; IBP, Inc. v. Alvarez, 546 U.S. 21, 28 (2005).

The parties dispute what constitutes "principal activities." The Supreme Court has defined the term "principal activities" as used in the Portal-to-Portal Act circularly, holding that it "embrac[es] all activities which are an integral and indispensable part of the principal activities." Integrity Staffing Sols., Inc., 135 S. Ct. at 517. The Court also has instructed that the term "principal activit[ies]" focuses on "the productive work that the employee is employed to perform." Id. at 519. The Court's reference to "the" productive work does not mean that each employee has only one task that qualifies as productive work. Id. Moreover, some federal circuit courts have construed "principal activities" to include "any work of consequence" or work that was "an integral and indispensable function of the defendant's business." Dunlop v. City Elec., Inc., 527 F.2d 394, 398–401 (5th Cir. 1976); see Kellar v. Summit Seating Inc, 664 F.3d 169, 176 (7th Cir. 2011).

13

Furthermore, an activity may be a principal activity even if it is unrelated to an employee's primary job description. Thus, loading and unloading equipment may be a principal activity even if done by an employee whose main task is not loading and unloading equipment. See Dunlop, 527 F.2d at 401; Carillo v. Borges Constr., LLC, No. GJH-13-641, 2016 WL 5716186, at *4 (D. Md. Sept. 30, 2016) (unpublished); Hernandez v. NJK Contractors, Inc., No. 09-CV-4812 (RER), 2015 WL 1966355, at *27 (E.D.N.Y. May 1, 2015) (unpublished).

Defendants argue that time spent loading trucks at defendants' shop before driving to the jobsite, or unloading the trucks after returning in the evening, is preliminary or postliminary to principal activities under the Portal-to-Portal Act. The court rejects this argument. Although plaintiffs had job titles other than "truck loaders," and their primary responsibilities involved other tasks requiring technical expertise, loading the trucks qualified as productive work, work of consequence, and work that was integral and indispensable to defendants' business. See, e.g., Integrity Staffing Sols., Inc., 135 S. Ct. at 517–19; IBP, Inc., 546 U.S. at 28; Kellar, 664 F.3d at 176; Dunlop, 527 F.2d at 401; Carillo, 2016 WL 5716186, at *4; Hernandez, 2015 WL 1966355, at *27. Thus, the work qualified as a principal activity, and the employees' hours spent loading and unloading trucks were not exempt from the FLSA's minimum-wage and overtime requirements under the Portal-to-Portal Act.

Defendants also argue that the time spent loading and unloading trucks is exempt from the FLSA's requirements under the Portal-to-Portal Act because defendants did not require employees to arrive at the worksite and load the trucks. The court rejects that argument. See, e.g., Integrity Staffing Sols., Inc., 135 S. Ct. at 517–19; Kellar, 664 F.3d at 176; Dunlop, 527 F.2d at 401. When defendants required work to be done off-site, employees were permitted to travel directly to the worksite on their own, or they could travel to defendants' shop, load the truck, and get a ride to the

14

worksite in the company truck. That defendants did not require the employees to load the truck does not exempt that activity from the FLSA's scope. See Integrity Staffing Sols., Inc., 135 S. Ct. at 517–19. The FLSA covers work the employer suffered or permitted to be done, not merely work the employer required. Even if defendants did not require the employees to load the truck, the work was productive work, work of consequence, and work that was indispensable to defendants' business. Moreover, even if other employees chose to drive straight to the worksite, those employees who loaded the truck and then rode to the worksite in a company truck were engaged in productive work.

Defendants also cite Department of Labor regulations interpreting what hours of work are compensable, but those regulations are inclusive and describe activities that qualify as compensable hours. The regulations do not exclusively define or limit the scope of compensable hours. See 29 C.F.R. § 553.221; id. § 785.38.

Finally, defendants argue that employees did not load and unload the truck every workday and that equipment would be left on-site for multi-day jobs. Although this point is relevant to damages, it does not change the court's analysis as to liability.

Having determined that loading and unloading trucks was not exempt under the Portal-to-Portal Act, the court grants plaintiffs' motion for summary judgment as to liability on Montoya's FLSA claims stemming from defendants' failure to pay him for the time he spent loading and unloading trucks, but denies summary judgment as to Hernandez's FLSA claim. The record shows that, at least in some workweeks, Montoya would load and unload trucks and was not paid for that time or intervening travel time. On each day Montoya worked loading and unloading the trucks, his workday began when he first started loading the truck and ended when he finished unloading the truck. Montoya is entitled to be paid for that work. To the extent the hours spent loading or unloading trucks made Montoya work in excess of 40 hours worked per week in a given workweek,

15

Montoya is entitled to overtime pay. Although the parties dispute how many hours Montoya worked in a given workweek, that question is properly addressed at the damages stage.

As for Hernandez's FLSA claim, a genuine issue of material fact exists concerning whether defendants failed to pay Hernandez for all hours worked. Thus, the court denies summary judgment on his FLSA claim. As for Zelaya's claim that he worked more than 40 hours per week and did not receive overtime pay, a genuine issue of material fact precludes summary judgment on that claim. A jury would have a legally sufficient basis to find that Zelaya did not work more than 40 hours per week and that defendants are not liable for failure to pay Zelaya overtime compensation.

As for plaintiffs' motion for summary judgment concerning whether defendants willfully violated the FLSA and whether defendants acted in good faith, genuine issues of material fact exist. See, e.g., Desmond v. PNGI Charles Town Gaming, L.L.C., 630 F.3d 351, 358–59 (4th Cir. 2011); Rehberg v. Flowers Baking Co., 162 F. Supp. 3d 490, 515 (W.D.N.C. 2016). Thus, the court denies plaintiffs' motion for summary judgment on those issues.

VI.

In sum, the court GRANTS defendants' motion for partial summary judgment as to the FLSA statute of limitations [D.E. 152], DISMISSES the FLSA claims of Jaime O. Alfaro, Antonio Mosqueda, Jose Mosqueda, Rafael Mosqueda, and Regina Clinton, DENIES defendants' motion for decertification of the collective action under the FLSA [D.E. 155], DECLINES to exercise supplemental jurisdiction over count three, DISMISSES count three without prejudice for further proceedings in state court, GRANTS in part plaintiffs' motions for summary judgment as to liability on Montoya's FLSA claim in count one [D.E. 133], and DENIES plaintiffs' motions for summary judgment as to Hernandez's and Zelaya's FLSA claims in count one and all of the FLSA claims in count two [D.E. 133, 141].

16

Case 5:13-cv-00810-D   Document 174   Filed 09/28/17   Page 16 of 17

The parties SHALL conduct a court-hosted settlement conference with United States Magistrate Judge Gates. Judge Gates will notify the parties how he wishes to proceed concerning the settlement conference and the date on which it will be held.

SO ORDERED. This 28 day of September 2017.

                                                JAMES C. DEVER III
                                                Chief United States District Judge